UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES E. CURRENCE,⠀⠀⠀⠀⠀)⠀⠀1:14CV0080
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀JUDGE LESLEY WELLS
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀(Mag. Judge Kenneth S. McHargh)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
COMMISSIONER OF SOCIAL⠀⠀)
⠀⠀⠀SECURITY ADMIN.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendant⠀⠀⠀⠀⠀)⠀⠀REPORT AND
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀<u>RECOMMENDATION</u>

McHARGH, MAG. JUDGE

⠀⠀⠀⠀This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Charles Currence's application for Social Security Disability and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

## I.  PROCEDURAL HISTORY

⠀⠀⠀⠀On June 28, 2006, Plaintiff Charles E. Currence ("Currence") applied for Disability and Supplemental Security Income benefits.  (Doc. 12, tr., at 85-94.) Currence stated that he became unable to work because of his disabling condition on Sept. 1, 2005.  (Tr., at 85, 130.)  Currence listed his physical or mental conditions

that limit his ability to work as "chronic pain in bones and muscles" for two years, which is only slightly tempered by pain medication ("possible neurological disease?"), and "thyroid problems."  (Tr., at 121.)

Currence's application was denied initially and upon reconsideration.  (Tr., at 493.)  On April 3, 2007, Currence filed a written request for a hearing before an administrative law judge.  (Tr., at 69.)

An Administrative Law Judge ("the ALJ") convened a hearing via video conference on September  11, 2008, to hear Currence's case.  (Tr., at 25-47.) Currence was represented by counsel at the hearing.  (Tr., at 27.)  Barbara Byers ("Byers"), a vocational expert, attended the hearing and provided testimony.  (Tr., at 27, 43-45.)

On September 19, 2008, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Currence was disabled.  (Tr., at

---

[1]  Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

12-24.)  Based on his review, the ALJ concluded Currence was not disabled.  (Tr., at 12, 23-24.)  Following the issuance of this ruling, Currence sought review of the ALJ's decision from the Appeals Council.  (Tr., at 10-11.)  However, the council denied Currence's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1-5.)  Currence sought judicial review of the Commissioner's final decision, but the parties filed a joint stipulation for remand, which was granted by the court.  The parties stipulated:

> The parties agree there is an inconsistency between the ALJ's assessed residual functional capacity and the hypothetical question posed to the vocational expert at the hearing.  The parties also agree that the ALJ's decision does not address the 2007 opinion from Dr. Drublionis, and that the 2006 and 2008 opinions of Dr. Drublionis were not outside his area of expertise as found in the ALJ's decision.  The parties agree that the physical limitations set forth by the psychologist Richard Halas, M.A., were outside his area of expertise.  On remand, the ALJ shall give further consideration to the opinions of Dr. Drublionis and psychologist Halas; give further consideration to the claimant's maximum residential functional capacity; and obtain supplemental vocational expert evidence.

(Doc. 14, PX A, at 1; Currence v. Astrue, No. 1:10CV1709 (N.D. Ohio Apr. 6, 2011) (motion, granted by marginal order); tr., at 648.)

A second hearing was held, before a different ALJ, on May 24, 2012.  (Tr., at 519-567.)  Currence was represented by counsel at the hearing.  (Tr., at 521.)  Ted Macy ("Macy"), a vocational expert, attended the hearing and provided testimony.

---

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

3

(Tr., at 521, 554-566.)  Counsel expanded on the limiting conditions which had been set forth in Currence's original application, to include:  "bulging disk in his lower lumbar spine, chronic pain, hyperthyroidism, neuropathy, as well as a mood disorder."  (Tr., at 526.)

On July 27, 2012, the second ALJ issued his decision applying the standard five-step analysis to determine whether Currence was disabled.  (Tr., at 490-505.) Based on his review, the ALJ again concluded Currence was not disabled.  (Tr., at 490, 504-505.)  The Appeals Council denied Currence's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 480-483.)  Currence now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Currence briefs two legal issues:

1.  Whether the ALJ erred in his rejection of the opinions of treating physician Raimantas Drublionis, M.D.

2.  Whether the ALJ properly followed the law of the case.

(Doc. 14, at 11.)


## II.  PERSONAL BACKGROUND INFORMATION

Currence was born on November 28, 1967, and was 42 years old as of his application date.  (Tr., at 24, 85, 165.)  Accordingly, Currence was at all times considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  Currence has a 9th-grade education, and is able to

4

communicate in English.  (Tr., at 30, 128, 532.)  He has no past relevant work.  (Tr., at 24.)

## III.  MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Currence's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Currence applied for Disability and Supplemental Security Income benefits on June 28, 2006.  (Doc. 12, tr., at 85-94.)  Currence had listed the conditions that limit his ability to work as "chronic pain in bones and muscles" for two years, which is only slightly tempered by pain medication ("possible neurological disease?"), and "thyroid problems."  (Tr., at 121.)

Currence began visiting his treating physician, Raimantas Drublionis, M.D., in March 2005.  (Tr., at 465, 499.)  In June 2006, Dr. Drublionis described Currence's medical conditions as neuropathy, arthritis, hypothyroidism, and left seventh rib fracture.  (Tr., at 384, 499.)  In December 2006, Dr. Drublionis noted that Currence was "responding well" to medication for "pain management secondary to osteoarthritis and neuropathy."  (Tr., at 370, 500.)  Other doctors also found that Currence's myalgia, arthritis, and pain responded well to medication at this time.  (Tr., at 500.)  In September 2007, Currence was also diagnosed with "bulging discs, spinal stenosis at L/S" in addition to his hypothyroidism.  (Tr., at 416, 499.)

In October 2008, Dr. Dublionis prescribed Vicodin for severe pain, and advised him to use it "very cautiously." (Tr., at 1016.) In January 2009, Dr. Drublionis had a long discussion with Currence regarding using pain medications, and had him sign an "opiate maintenance agreement." (Tr., at 1013.) In February 2009, March 2009 and again in August 2009, Dr. Drublionis had long discussions with Currence regarding the safe use of pain medications. (Tr., at 1012, 1011, 1006.)

Dr. Drublionis continued to treat Currence, and in March 2011, he filled out a "Basic Medical" form which indicated severe tenderness in the spine and tenderness in the joints, bulging discs at L3/L4, moderate stenosis in some areas, neuropathy, arthritis, and multiple prescriptions for pain medications and other drugs. (Tr., at 1174.) Dr. Drublionis indicated a number of limitations arising from Currence's medical conditions, which will be discussed below. (Tr., at 1175.)

## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert Macy provided testimony. (Tr., at 554-xx.) Macy clarified that Currence had past relevant work as a spray painter, DOT number 741.687-018, which is normally medium, unskilled, SPV 2, although in his case it may have been light or medium level. (Tr., at 559.) Currence had also worked as a mold finisher, which is a heavy job, semi-skilled, SPV 3, DOT number 518.684-018; and also as a material hander, also heavy and semi-skilled, SPV3, DOT number 929.687-030. (Tr., at 561.)

6

The ALJ posed a hypothetical question concerning an individual with Currence's same age, limited education, and vocational background, who has the residual functional capacity to perform a limited range of light work, and can only occasionally climb, balance, stoop, bend, crouch and crawl.  The hypothetical person can perform only simple routine repetitive one or two step tasks, and he cannot work in a fast-paced environment.  (Tr., at 562-563.)  In response to the ALJ's question, Macy stated that such a hypothetical individual would not be able to do any of Currence's past work.  (Tr., at 563.)

Macy was then asked whether, within those hypothetical parameters, there would be jobs in the national and local economies that such an individual could perform.  (Tr., at 563.)  Macy answered that there were, and gave several examples of unskilled jobs in the light range:  a wire worker is light, unskilled, DOT number 728.684-022, and in northeast Ohio there are 750 such jobs, nationally 105,000.  Another example is electronics worker, light, unskilled, DOT number is 726.687-022.  In northeast Ohio 450 jobs, nationally 60,000.  Both of these jobs are SPV one and two.  (Tr., at 563.)  A third example is bench hand, which is a sedentary, unskilled job, DOT number 715.684-6026, of which there are 650 jobs in northeast Ohio, and 95,000 nationally.  (Tr., at 564.)

The ALJ then modified the hypothetical, to a person limited to sedentary work, with the additional limitations which included that the person could only occasionally climb, balance, stoop, bend, kneel, crouch or crawl, and was confined to performing simple routine repetitive one or two step tasks in an environment that's

not fast-paced and that involved only occasional workplace changes.  Additionally, the hypothetical individual could walk no more than 30 minutes at a time, and could sit for no more than 20 minutes at a time.  The ALJ asked if such a person would be able to perform any of the jobs the VE described, or any jobs in the local or national economy.  (Tr., at 564.)

Macy responded that the walking limitation would have no impact on the sedentary jobs, and that the sitting limitation would not be a problem if the individual was staying on task while at the work station, either sitting or standing. (Tr., at 564-565.)  However, the wire worker and electronics worker job numbers would be significantly diminished.  Id. at 565.

In response to the ALJ's request for a couple more sedentary jobs, Macy offered, in addition to the sedentary job already mentioned, a table worker, sedentary and unskilled, SPV 1, DOT number 739.687-182.  Macy testified there were 450 such jobs in northeast Ohio, and 60,000 nationally.  Another example is final assembler, which is sedentary and unskilled, SPVs one and two, DOT number 713.687-018.  In northeast Ohio there are 600 such jobs, and 90,000 nationally. (Tr., at 565.)

The ALJ then asked if the person was unable to lift more than five pounds on a consistent basis, either occasionally or frequently, but had all the other limitations in the second hypothetical, would these (or any) jobs be available?  The VE said that, with that limitation, there would be no jobs, "not without some special accommodations."  (Tr., at 565-566.)

8

## V.  ALJ's DECISION

The second ALJ made the following findings of fact and conclusions of law in his July 27, 2012, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments:  myalgias; neuropathy; arthritis; thyroid disorder; mood disorder; fibromyalgis; and sciatica/stenosis (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb, balance, stoop, bend, crouch, or crawl; and can perform only simple, routine, repetitive, 1 or 2 step tasks, not performed in a fast-paced environment and involving relatively few work place changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 22, 1967, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

9

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 12, tr., at 496-498, 503-504.)


# VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.


# VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r

10

of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983). This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## VIII.  ANALYSIS

### A.  Opinion of Treating Physician

The first issue raised by Currence is:

11

Whether the ALJ erred in his rejection of the opinions of treating
physician Raimantas Drublionis, M.D .

(Doc. 14, at 11.)  The ALJ's July 2012 decision discussed Dr. Drublionis' conclusions,

and the weight assigned to his opinions, as follows:

. . . although Dr. Raimantas Drublionis treated the claimant from
March 2005 to August 2008 and issued annual opinions regarding the
claimant's status, his opinions are not well supported, so I do not find
them controlling and, rather, I accord them only some weight.  And in
regards to Dr. Drublionis' opinions throughout the record that the
claimant is unemployable, these opinions receive no weight since it is
reserved for the Commissioner.  In June 2006, Dr. Drublionis found
the claimant had neuropathy, arthritis, hypothyroidism and a left rib
fracture.  He found the combined effects of these impairments
resulting in standing/ walking 4-6 hours in a workday with 20 to 30
minute interruptions; lifting 5-10 pounds frequently and 11-20 pounds
occasionally; moderately limited in pushing/ pulling and bending and
markedly limited in handling.  He believed these limitations were
expected to last 9-11 months and that the claimant was unemployable.
However, less than a year before, the claimant was performing
medium level exertional work by painting railroad cars.  Also during
this period as explained above, the claimant's medications were
providing significant relief to his many ailments.  Additionally, the
office visit notes, showing unremarkable examinations of normal
strength, reflexes, and tone with no swelling, are contrary to these
opinions.

In August 2007, Dr. Drublionis prepared another residual functional
capacity evaluation, in which he opined that the claimant can stand or
walk for up to an hour and sit for two hour[s] during an eight-hour
workday, lift up to five pounds occasionally and frequently with
limited postural limitations.  The physician provided the same opinion
later, in March 2011.  These opinions are contrary to the claimant's
activities of daily living, and thus only deserve some weight.

Dr. Drublionis prepared another residual functional capacity
evaluation on August 27, 2008.  Although finding increased
limitations, Dr. Drublionis did not produce any additional evidence to
support these additional limitations.  According to Dr. Drublionis, the
claimant could sit or stand for 2 hours in an 8 hour day and never lift,
carry, or perform repetitive reaching, handling or fingering and avoid

12

temperature extremes, wetness and humidity. Also, the claimant would miss four days of work and must elevate his legs. It must be noted that all of Dr. Drublionis' opinions are only given some weight since all of his opinions are internally inconsistent. Looking back through the record, almost every office visit note says the claimant's extremities are normal with no edema, musculoskeletal exam normal, extremities normal with no edema [repeated sic], normal tone and power in upper extremities, reflexes intact in upper and lower extremities and no swelling or tenderness in joints. While there is some support for pain in terms of an MRI showing lumbar issues, the internal inconsistencies make it difficult for me to give these opinions much weight. The doctor prescribes a lot of pain medication without trying any other issues for the claimant's back pain, such as physical therapy or surgery. Even the doctor has concerns regarding the claimant's misuse of pain medicines (no longer prescribing Percocet, and later prescribing Vicodin), and he discusses this with the claimant prior to discontinuing that drug. Therefore, because these conclusions are only supported by the claimant's subjective complaints and are not well-supported by the evidence, such as there is no evidence of swelling to support leg elevation, and the record shows a lack of treatment other than prescriptions for pain medications, the opinions are internally inconsistent and are given only some weight.

In addition to these physical limitations, Dr. Drublionis also produced opinions regarding the claimant's mental capacity. He found that the claimant had mild restrictions in activities of daily living and social functioning and deficiencies in concentration, persistence and pace. Also, he later noted that he was unclear if the claimant had any functional limitations due to mental impairments. Again, I assign only some weight. Dr. Drublionis is an internist and not a mental health provider. Furthermore, there is nothing in the record to indicate the claimant engaged in extensive treatment or therapy for his mental problems. Moreover, during his testimony at the first hearing, the claimant did not elaborate on the difficulties he had with memory or concentration.

(Tr., at 501-502, internal citations omitted.)

The ALJ is correct that Dr. Drublionis' opinion(s) that Currence is

"unemployable" is a conclusion on the ultimate issue of disability. Such a

conclusion, even by a treating physician, is not entitled to controlling weight, as the

13

issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner. See 20 C.F.R. § 416.927(d)(1); Vance v. Commissioner of Social Security, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (opinion that claimant is "disabled" is not a medical opinion); Houston v. Secretary, HHS, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference. See 20 C.F.R § 416.927(d)(3).

Currence argues that the ALJ dismissed Dr. Drublionis' opinions "in a manner that runs contrary to the treating physician rule," thus the decision should be vacated and remanded. (Doc. 14, at 12-17.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. Id.; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." Blakley, 581

14

F.3d at 406; Wilson, 378 F.3d at 544.  In other words, treating physicians' opinions
are only given deference when supported by objective medical evidence.  Vance,
2008 WL 162942, at *3 (citing Jones v. Commissioner, 336 F.3d 469, 477 (6th Cir.
2003)).

Even when a treating source's opinion is not entitled to controlling weight, an
ALJ must still determine how much weight to assign to the opinion by applying
specific factors set forth in the governing regulations.  20 C.F.R. §§
404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Social Security regulations require the ALJ to
give good reasons for discounting evidence of disability submitted by the treating
physician(s).  Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3.  Those good
reasons must be supported by evidence in the case record, and must be sufficiently
specific to make clear to subsequent reviewers the weight assigned to the treating
physician's opinion, and the reasons for that weight.  Blakley, 581 F.3d at 406-407;
Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting
SSR 96-2p).

Remand may be appropriate when an ALJ fails to provide adequate reasons
explaining the weight he assigned to the treating source's opinions, even though
"substantial evidence otherwise supports the decision of the Commissioner."
Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan.
7, 2011) (quoting Wilson, 378 F.3d at 543-46).

Currence claims that "the ALJ made no meaningful finding in line with these
standards."  (Doc. 14, at 13.)  Currence contends that the reasons supporting the

15

ALJ's finding on Dr. Drublionis' opinions are not true.  Id.  Currence disputes the ALJ's reading of the record, for example, that the lack of treatment, other than pain medications, is inconsistent with Dr. Drublionis' restrictions.  (Doc. 14, at13-14.)  It is proper for the ALJ to consider what treatment, other than medication, a claimant has received to alleviate pain.  20 C.F.R. § 404.1529(c)(3)(v).  Concerning the treatment Currence received, he points to the determination of a back specialist who, he claims, "determined that surgical intervention would not be helpful but that pain management, including high doses of narcotic medications might be beneficial."  (Doc. 14, at 14, citing tr., at 460, 1002.)

Reference to the back specialist's report itself, cited by Currence, actually would provide additional substantial evidence in support of the ALJ's RFC finding.  Currence was referred by Dr. Drublionis to University Hospitals' Department of Orthopaedics for low back pain, where he was seen by Christopher G. Furey, M.D.  Dr. Furey evaluated Currence as "a bit of a vague historian," who reported that he "intermittently . . . has low back pain but it is not persistent."  (Tr., at 1002.)  Currence did tell Dr. Furey that he had chronic "whole body type pain" which made it "difficult for him to distinguish when his back pain is bothering him more."  Id.  Dr. Furey pointed out that Currence had no radiating buttock or leg pain.  Dr. Furey stated:  "No treatment at this point.  Occasionally he uses Tramadol or Percocet for the low back pain."  Dr. Furey summarized his findings thus:

> It seems as though he is describing low back pain without
> radiculopathy.  I would treat this conservatively with an exercise

program and anti-inflammatories.[2]  I would like him to get a hold of his MRI so that I can review it but I do not suspect that he will need to consider anything aggressive.  His exam is benign without evidence of neurologic deficit or myelopathy.

(Tr., at 1002.)

Contrary to Currence's representation, the back specialist does not state that "high doses of narcotic medications might be beneficial" (doc. 14, at 14), but rather suggests an "exercise program and anti-inflammatories."  (Tr., at 1002.)  There is no specific finding that "surgical intervention would not be helpful" (doc. 14, at 14) but rather a statement that aggressive treatment is not necessary.  (Tr., at 1002.)

The Commissioner points out that "several examinations over a five-year period consistently showed that Plaintiff had normal strength, reflexes, and tone in his extremities, and no swelling or joint tenderness."  (Doc. 16, at 8, with numerous citations to record.)  Even if Currence reported some tenderness, the Commissioner points out that experiencing some discomfort is not equivalent to demonstrating an inability to work.  (Doc. 16, at 9; see generally 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").)

Currence also states that the ALJ discounted Dr. Drublionis' most recent (March 2011) opinion "because it is allegedly contrary to Currence's activities of daily living," and does not specify how or which activities contradict the opinion.  (Doc. 14, at 15.)  The ALJ's discussion of the August 2007 and March 2011 opinions were assessed to deserve "only some weight" because they were contrary to

_____

[2]  [Typical anti-inflammatory drugs are aspirin, ibuprofen (Advil, Motrin).]

Currence's activities of daily living.  (Tr., at 501.)  The ALJ discussed these activities earlier in his decision, stating that Currence had "mild restriction" in his activities of daily living.  The ALJ pointed out that Currence "testified that he shares household chores with his wife and reports no problem taking care of his personal needs.  He also takes care of the children, takes the dog out, shops, but has another person drive him."  (Tr., at 497.)

It is proper for an ALJ to consider a claimant's ability to conduct daily life activities, where there is a claim of chronic, disabling pain.  Warner v. Commissioner, 375 F.3d 387, 392 (6th Cir. 2004) (citing Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997)); see also 20 C.F.R. § 404.1529(c)(3)(i); Cruse v. Commissioner, 502 F.3d 532, 542 (6th Cir. 2007).  Currence argues that the Sixth Circuit has held that performing daily activities does not militate against a finding of disability where the performance of those activities does not resemble the activities of working.  (Doc. 14, at 15, citing Rogers v. Commissioner, 486 F.3d 234, 248-249 (6th Cir. 2007).)

In Rogers, the court found that the claimant's "somewhat minimal daily functions are not comparable to typical work activities."  Id. at 248.  The court pointed out that the ALJ mischaracterized the claimant's testimony regarding the scope of her activities, to cite one example, "the extent of her care for her dog includes opening the door to let him out in the morning."  Id. at 249.  In contrast, the ALJ here accurately summarized Currence's testimony, and the activities cited are not comparable.  See, e.g., Norris v. Commissioner, No. 11-5424, 2012 WL

372986, at *5 (6th Cir. Feb. 7, 2012) (ALJ did not misconstrue facts in record; distinguishing Rogers).

More recently, the Sixth Circuit pointed out that, although the ability to do household chores is not direct evidence of an ability to do gainful work, an ALJ may consider such activities in evaluating a claimant's assertions of pain. Keeton v. Commissioner, No. 13-4360, 2014 WL 5151626, at *15 (6th Cir. Oct. 14, 2014) (quoting Walters, 127 F.3d at 532).

Currence contends that his allegations of disabling pain should be credited when accompanied by his testimony concerning his daily activities "and the lack of any allegations from treating physicians that the allegations are exaggerated." (Doc. 14, at 16-17.) However, the Sixth Circuit has stated that "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." Duncan v. Secretary, HHS, 801 F.2d 847, 852-853 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529). The proper standard is:

> In evaluating subjective complaints of disabling pain, this court looks
> to see whether there is objective medical evidence of an underlying
> medical condition, and if so then, 1) whether objective medical
> evidence confirms the severity of the alleged pain arising from the
> condition; or, 2) whether the objectively established medical condition
> is of such a severity that it can reasonably be expected to produce the
> alleged disabling pain.

McCoy ex rel. McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995), cert. denied, 518 U.S. 1022 (1996); Duncan, 801 F.2d at 853. Disability is then to be determined after consideration of "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with objective medical evidence." McCoy, 81 F.3d at 47

19

(quoting 20 C.F.R. § 404.1529(a)). Currence does not specifically allege that the ALJ did not follow this standard, and the ALJ's decision appears to comply with it. See generally tr., at 498-501.

In any event, the undersigned finds that the ALJ's decision concerning the weight given to the opinions of Dr. Drublionis is supported by evidence in the case record, is sufficiently specific to make clear the weight assigned to the treating physician's opinion, and gives good reasons for that weight. The court should overrule the first assignment of error.

## B.  Law of the Case

The second issue raised by Currence is "Whether the ALJ properly followed the law of the case." (Doc. 14, at 11.) Currence points out that the decision appealed herein is the second decision by an Administrative Law Judge in this matter. Currence argues that "the ALJ's failure to complete a proper evaluation of treating physician evidence resulted in a failure to follow the law of the case." (Doc. 14, at 17.)

Currence contends that the law of the case doctrine dictates that "findings made at one point in the litigation become the law of the case for subsequent stages of that litigation." (Doc. 14, at 17, quoting Rouse v. DaimlerChrysler Corp., 300 F.3d 711, 715 (6th Cir. 2002).) Of course, as Currence concedes, the remand in this case originated in a joint stipulation of the parties. See generally doc. 14, PX A, at 1; Currence v. Astrue, No. 1:10CV1709 (N.D. Ohio Apr. 6, 2011) (motion, granted by

marginal order); tr. at 648. Thus, no "findings" were made by the district court in the first case (as cited).

Social Security regulations provide for action by the ALJ on remand: "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Currence argues that the (second) ALJ failed to carry out the directive of the Appeals Council concerning Dr. Drublionis' opinions, specifically:

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p). In so doing, evaluate the opinion[] of [Dr. Drublionis] pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 9602p and 96-5p, and the explain the weight given to such opinion evidence.

(Tr., at 629.) Currence contends that the ALJ erred by failing to complete an adequate and proper evaluation of Dr. Drublionis' opinions, and by failing to properly explain the weight given to his opinions. (Doc. 14, at 18.)

The Commissioner responds that the ALJ followed the directives of the Appeals Council, and thoroughly covered each one of Dr. Drublionis' opinions. (Doc. 16, at 12-13, citing tr., at 501-502.) The Commissioner notes that, although Currence may disagree with the ALJ's conclusions, that does not mean that the ALJ failed to follow the directives of the Appeals Council. (Doc. 16, at 13.)

21

As already discussed more fully above, the undersigned finds that the ALJ's decision discusses the relevant opinions, the weight given to the opinions of Dr. Drublionis is supported by evidence in the case record, and the ALJ gives good reasons for that weight.  The undersigned finds that the ALJ carried out the directive of the Appeals Council, and the court should overrule the second assignment of error.

## IX.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  It is recommended that the decision of the ALJ be AFFIRMED.

<div style="margin-left:50%">

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

</div>

Date:  Dec. 17, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate

Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).